UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CHEMBULK MANAGEMENT PTE LTD,

      Plaintiff,

  -v-                                                No. 16 CV 9827-LTS-KHP

VEDANTA LIMITED f/k/a SESA
STERLITE LIMITED and SESA STERLITE
LIMITED – STERLITE COPPER,

      Defendants.

-------------------------------------------------------x
NAVIG8 CHEMICALS ASIA PTE LTD,

      Plaintiff,

  -v-                                                  No. 16 CV 9799-LTS-KHP

VEDANTA LIMITED,

      Defendant.

-------------------------------------------------------x

<u>MEMORANDUM ORDER ADOPTING REPORT AND RECOMMENDATION</u>

In this now consolidated action, plaintiffs Chembulk Management PTE Ltd. ("Chembulk") and Navig8 Chemicals Asia PTE Ltd. (collectively "Plaintiffs") have filed complaints against Vedanta Limited ("Vedanta") and, in the case of Chembulk, Sesa Sterlite Limited – Sterlite Copper (collectively "Defendants"), seeking <u>ex parte</u> orders of maritime attachment and garnishment pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure in connection with claims arising from damage to tanker vessels. (<u>See</u> Compl., 16-CV-9827, Docket Entry No. 1; <u>see</u> Compl., 16-CV-9799, Docket Entry No. 1.) Both orders were granted by the Court (Order, 16-CV-9827, Docket Entry No. 10; Order, 16-CV-9799,

Docket Entry No. 3), and Defendants now move pursuant to Supplemental Admiralty Rule E(4)(f) of the Federal Rules of Civil Procedure to vacate the orders of maritime attachment. (16-CV-9827, Docket Entry No. 18; 16-CV-9799, Docket Entry Nos. 16 and 28.) Magistrate Judge Katharine H. Parker has issued a Report and Recommendation (the "Report") recommending that the Court grant the motions to vacate. (16-CV-9799, Docket Entry No. 61.)

Plaintiffs timely filed a consolidated objection to the Report (the "Objection"). (16-CV-9799, Docket Entry No. 69.) The Court has thoroughly reviewed the Report, the Objection, and the relevant filings and for the reasons set forth below adopts the Report, in part, and grants Defendants' motions to vacate.

In reviewing a Report and Recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.S. § 636(b)(1)(C) (LexisNexis 2017).

The district court must review de novo the portions of the Report to which timely objections have been made. See United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). Objections to a report and recommendation "are to be specific and are to address only those portions of the proposed findings to which the party objects." Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan, 806 F. Supp. 380, 381-82 (W.D.N.Y. 1992). Where a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the report and recommendation only for clear error. See Zamudio-Berges v. United States, No. 08 Civ. 8789, 2013 WL 2896978, at *3 (S.D.N.Y. June 13, 2013); Camardo, 806 F. Supp. at 382. When the objections raised are "merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original

petition [they] will not suffice to invoke de novo review." See Vega v. Artuz, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002).

The Court has reviewed de novo the aspects of Judge Parker's Report to which Plaintiffs have objected, except for certain discovery-related determinations, which have been reviewed under Federal Rule of Civil Procedure 72(a). Plaintiffs' objections are overruled, and the motions to vacate are granted, for the following reasons.

This Memorandum Order assumes familiarity with the facts described in the Report.

## DISCUSSION

A plaintiff is entitled to an ex parte order of maritime attachment and garnishment if: "it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. V. Gardner Smith Pty Ltd., 460 F.3d 434, 445, 445 n.5 (2d Cir. 2006), overruled on other grounds by Shipping Corp. of India v. Jaldhi Overseas PTE Ltd., 585 F.3d 58, 60, 69-71 (2d Cir. 2009). Upon a motion to vacate the order by a defendant, the plaintiff has the burden of demonstrating that it has met the aforementioned requirements. Id.

The Report found that Plaintiffs, who have repeatedly served the orders of attachment and assert that they were entitled to attach certain funds that Citibank N.A. ("Citibank New York") applied to dividend payments to holders of American Depositary Shares ("ADSs") relating to Vedanta stock, were not entitled to maintain the previously-issued orders of maritime and attachment and garnishment because they failed to meet their burden of demonstrating that

Defendants had any property that could be found within this district at any relevant time. (Report at 12-19.)  Specifically, the Report found that had Vedanta surrendered any property interest in dividend payments made through Citibank New York and its Mumbai branch ("Citibank Mumbai" and, collectively, "Citibank") as the depositary and custodian banks, respectively, under the Deposit Agreement by and among SESA GOA Limited and Citibank, N.A., as Depositary, and the Holders and Beneficial Owners of ADSs Issued Hereunder ("Deposit Agreement") (16-CV-9799, Docket Entry No. 30-5) once Vedanta remitted those payments, and thus any such payments handled by Citibank in this district did not constitute property of Vedanta.  (Id.)

The Report's conclusion that the dividend payment was not Vedanta's property when it reached Citibank New York rests primarily on three legal principles.  First, an American Depositary Receipt ("ADR") or ADS program[1] divides the ownership of a foreign stock between the depositary and/or custodian, which act as the title owner, and the ADS holder, who holds a beneficial interest, the exact parameters of which are delineated in the governing ADR agreement, in the stock.  See Carver v. Bank of New York Mellon, No. 15-CV-10180 (JPO), 2017 WL 1208598, at *6-7 (S.D.N.Y. Mar. 31, 2017.); (Report at 14-15).  Here, consistent with the Deposit Agreement, the holders of Vedanta ADSs hold "the rights and interests in the Deposited [Vedanta] Shares," that are held by Citibank Mumbai, including the rights to dividend and interest payments and the right to exchange ADSs for shares of Vedanta stock.  (Report at 15-16 (quoting Deposit Agreement § 1.4); Deposit Agreement §§ 1.4, 2.4, 2.7, 4.1;) see Carver, 2017 WL 1208598, at *6.

---

[1]  ADSs are also referred to as ADRs.  (See Report at 3.)

Second, the Report determined that the Deposit Agreement does not permit Vedanta to cancel or claw back dividends once the payment is deposited at Citibank Mumbai, and that it is well established law that a company cannot rescind a cash dividend once it has been declared.  (Report at 16-17, citing Wertheim Schroder & Co. v. Avon Prod., Inc., No. 91 CIV. 2287 (PKL), 1993 WL 126427, at *9 (S.D.N.Y. Apr. 1, 1993) (stating that once declared, a dividend cannot be rescinded).)

Third, the Report looked to Second Circuit precedent for the proposition that money transmitted through an intermediate Electronic Funds Transfer ceases to be the property of the originator when it exits the originator's bank account, but does not become property of the recipient until it clears all intermediate accounts and is deposited with the recipient's bank. (Report at 13-14, citing Shipping Corp. of India, 585 F.3d at 69-71.)  The Report reasoned that dividend payments held in this district by Citibank New York for further payment to the ADS holders are more attenuated from the originator than the intermediate ETFs at issue in Shipping Corp. of India.  (Id. at 14.)

Judge Parker also denied Plaintiffs' motion for further discovery regarding the ADR program and the dividends, as well as their request for discovery concerning fees that Plaintiff hypothesized might be payable to Vedanta by Citibank, reasoning that the dividend payments were not property of Vedanta and that Plaintiffs had provided no evidence that Vedanta held or would hold any property within this district.  Citibank represented that it had collected certain fees from ADS holders for Vedanta and paid them from an account located in Florida and transmitted through an intermediate account in New York, shortly before the Court entered the orders of maritime attachment and garnishment, but also stated that no future payments were scheduled.  (Citibank's Response to Interrogatories, Docket Entry No. 48-2,

Resp. No. 12.) Judge Parker concluded that Plaintiffs' assertion that future fees destined for Vedanta may pass through New York, unsupported by any evidence, amounted to speculation and did not support further discovery. (Report at 19-20.)

## Discussion

Plaintiffs have raised several objections to the Report: (1) that the Report inconsistently found that ADS holders have both an absolute and beneficial ownership interest in the ADSs, raising the possibility that, if the ADS holders indeed hold only a beneficial interest, Vedanta possibly retained some ownership interest in the ADSs; (2) that the Report's conclusion that dividends paid in an incorrect sum or to the wrong party could be retracted indicates that Vedanta retained an interest in the funds; (3) that the Report erroneously relied on Article 8 of New York's Uniform Commercial Code ("UCC") in reaching its decision; and (4) that Plaintiffs were entitled to discovery.

<u>Objection Concerning "Inconsistent" Findings Regarding Interests in ADSs</u>

Plaintiffs point to the Report's findings and use of quotations from the Deposit Agreement in support of their assertion the Report inconsistently held that ADS holders enjoy both an absolute ownership interest and a beneficial interest in the ADSs. (Pls.' Consolidated Objection, 16-CV-9799, Docket Entry No. 69, at 6-7 citing Report at 7-8, 15.) Plaintiffs assert that, to the extent the ADS holders have a beneficial, rather than an absolute, property interest in the ADSs or the underlying shares of Vedanta stock,[2] there is necessarily a residual property

---

[2] Plaintiffs' objection does not clearly state whether they believe the Report left open the possibility that the ADS holders have only a beneficial property interests in the ADSs, the underlying shares of Vedanta stock, or both.

interest, and it is thus "possible that Vedanta also retains some legal interest in the shares." (Id. at 6.)

Plaintiffs misconstrue the Report's analysis and the terms of the Deposit Agreement. The Deposit Agreement contains no provision supporting an inference that Vedanta enjoys a residual ownership interest in the stock underlying the ADSs, just as Vedanta would retain no ownership interest in its stock once issued to a more traditional shareholder. Similar to the interests of a traditional stockholder, the totality of the ownership interests in the Vedanta stock used in the ADR program is held by the combination of Citibank and the ADS holders, who, through the Deposit Agreement, divided the ownership rights in the stock among a title owner, Citibank, and a beneficial owner, the ADS holder, leaving no residual interest to Vedanta. Cf. Carver, 2017 WL 1208598, at *6-7. A close reading of the Deposit Agreement confirms this division by stating that "Deposited Securities [(Vedanta stock)] shall be held by the Depositary or by a Custodian for the account and to the order of the Depositary . . . on behalf of the [ADS] Holders" who, as beneficial holders, enjoy "the rights and interest in the Deposited shares," including the right to receive dividends and interest and to redeem ADSs for Vedanta stock. (Deposit Agreement §§ 1.4, 2.4, 2.7, 4.1 (second emphasis added); Cf. Carver, 2017 WL 1208598, at *6 (reading the subject deposit agreement to refer to the title owner who "holds" the underlying security and the beneficial owners, ADS holders who enjoy most of the rights and interests in the underlying security).

While the ADS holder's beneficial interest in the Vedanta stock is represented by his or her absolute ownership of an ADS, the Deposit Agreement does make provisions for ADS ownership itself to be divided between a title owner, in whose name an ADS is registered, and a beneficial owner, on whose behalf such ADSs are held. (Deposit Agreement §§ 1.6, 1.21.) The

Report's quotations from the Deposit Agreement merely acknowledge the potential for such divided ownership by the purchasers of ADSs, just as how purchasers of other types of property may elect to divide ownership rights and interests among several parties.

Thus there is no inconsistency and, in view of Judge Parker's well-founded conclusion that absolute ownership of the shares of Vedanta stock was transferred to Citibank, where its ownership was divided between Citibank and the ADS holders, there is no non-speculative basis for any assertion that a portion of beneficial ownership of either Vedanta shares or ADSs was retained by Vedanta. Plaintiffs point to no provision of the Deposit Agreement that could conceivably support the conclusion that Vedanta retained any residual ownership stake in either the underlying shares of Vedanta stock or the ADSs and have thus failed to meet their burden of establishing that Vedanta has an ownership interest in the dividend payments. See Aqua Stoli Shipping, 460 F.3d at 445 n.5 (2d Cir. 2006) ("Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E"). Accordingly, this aspect of Plaintiffs' objection is overruled.[3]

Objection Concerning the Ability to "Retract" Improper Dividends

The Report stated that Plaintiffs' expert Carl Hagberg's declaration, that "Citibank acted as Vedanta's agent and could be tasked with correcting (i.e. clawing back dividends) [if] any mistakes [were] made," was incorrect and contrary to the Deposit Agreement,

---

[3] Plaintiffs also object to Judge Parker's consideration of the impact on the financial services industry if dividend payments remitted by a company were subject to attachment by the company's creditors as irrelevant to the analysis of whether Vedanta had a property interest sufficient to maintain an order of maritime attachment. Similar practical impacts on the banking industry were, however, discussed in the Second Circuit's Shipping Corp. of India decision, upon which Judge Parker relied, and lead the Second Circuit to announce the legal rule that electronic funds in transit are the property of neither the originator nor the intended recipient. 585 F.3d at 60-64, 68-69, 71.

but commented that "Plaintiffs are correct that if dividends are paid to the wrong person, or paid in an amount larger than actually due, the funds could be retracted." (Report at 19.) Plaintiffs do not object to the Report's conclusion that Citibank did not act Vedanta's agent. Instead, Plaintiffs assert that the Report does not sufficiently detail the nature of the potential "retraction" and that, to the extent the Report implies that Vedanta could claw back improper dividends, Vedanta thus retained a property interest in those funds sufficient to maintain an order of maritime attachment and garnishment.

The Report was simply commenting on Hagberg's suggestion that Citibank could retrieve any dividend payments disbursed in order to comply with the Court's order of attachment then in effect and, more broadly, that Citibank, like any other bank, could retrieve erroneous payments. (See Hagberg Decl., 16-CV-9799, Docket Entry No. 45, ¶¶ 31-32.) The Report did not make any findings that suggest that Vedanta could itself retract dividend payments or that it retained any residual interest in such payments. In fact, the Report found that once a dividend has been declared, a company ceases to have any interest in its dividend payments. (Report at 16-17, citing Wertheim Schroder, 1993 WL 126427, at *9 (stating that once declared, a dividend cannot be rescinded).) Accordingly this objection is overruled.[4]

Objection Concerning Invocation of Article 8 of New York's UCC

Plaintiffs object to the Report's consideration of Article 8 of New York's UCC in support of its determination that Vedanta had no property interests within the district, contending

---

[4] Plaintiffs also criticize the Report's characterization of the dividend as "valid" (and thus not subject to claw back or attachment for the benefit of Vedanta's creditors) as unsupported by record evidence that the dividends in this case were indeed validly paid. (Report at 19.) The Court declines to address this argument because it finds that Plaintiffs have not established that Vedanta had a property interest in the dividend payments regardless of whether Citibank transmitted them to incorrect ADS holders.

that that statute is inapplicable and the Report's analysis was erroneous. Defendants argue, and this Court agrees, that the Report's consideration of Article 8 is unnecessary because its holding is amply supported by its examination of federal case law and the Deposit Agreement. Indeed, the Report acknowledges as much in stating that Article 8 "supports this result as well." (Report at 17.) The Court therefore declines to adopt the section of the Report analyzing Article 8 (Report at 17-18) as unnecessary to its recommended holding.

Objection to Denial of Discovery

Plaintiffs object to Judge Parker's denial of their request for discovery, asserting that they are entitled to further information regarding the specific nature of the ADR dividend payments made by Citibank and whether Citibank collected any fees for Vedanta in New York. Because these cases were referred to Judge Parker for general pretrial management, her non-dispositive ruling on the discovery dispute will be upheld by this Court unless "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 71(a); see Medtech Prods. Ranir. LLC, 596 F. Supp. 2d 778, 190 n.7 (reviewing the portions of a magistrate judge's report and recommendation to permit limited discovery for clear error pursuant to Federal Rule of Civil Procedure 72(a)). Here, Judge Parker relied on Citibank's interrogatory responses that stated that it held none of Plaintiff's property within this district in the preceding 12 months, it did not expect to do so in the future, and that, following the payment of fees to Vedanta from the Florida account, it had no scheduled future payments, to conclude that there was no basis to believe that Defendant's had any property within the district and that any request for discovery was based on "a mere hunch." (Report at 19-20; Citibank New York's Response to Interrogatories, Resp. Nos. 1, 2, 6, 11, 12.) Judge Parker's determination that no record basis existed beyond Plaintiffs' "mere hunch," for discovery beyond that which had already been made was not clearly erroneous. Accordingly,

Judge Parker's denial of further discovery was neither clearly erroneous nor contrary to law, the objection is overruled and Judge Parker's ruling stands.[5]

<u>C</u>ONCLUSION

For the foregoing reasons, the Court adopts Judge Parker's thorough and well-reasoned Report, with the exception of the last paragraph on page 17 through the end of page 18, and grants Defendants' motions to vacate the maritime orders of attachment and garnishment. The objection to Judge Parker's denial of Plaintiffs' request for further discovery is overruled, and that ruling stands.

---

[5] Plaintiffs also argue that the Report was based on unsupported evidence and that discovery is required to produce the evidence necessary to support its factual conclusions. The Report's examination of the Deposit Agreement sufficiently supports its findings as to the parties' relative property interests in the dividend payments without further inquiry in to the specific amounts, routing, and nature of those payments. Plaintiffs also assert that the Report lacked an evidentiary basis to conclude that the dividend payments were routed through New York. If such payments were not in fact routed through New York, however, Plaintiff would have no basis for a maritime order of attachment and garnishment in this district. See <u>Aqua Stoli Shipping</u>, 460 F.3d at 445 (stating, <u>inter alia</u>, that to maintain a maritime order of attachment and garnishment, the defendant's property must be found within the district). Plaintiffs also assert that the Report lacked an evidentiary basis for certain other findings of fact summarized in the Report (<u>e.g.</u> Report at 10-11), however, the relevant facts are generally provided for in Citibank New York's interrogatory responses.

The Memorandum Order resolves 16-CV-9827, Docket Entry No. 18 and 16-CV-9799, Docket Entry Nos. 16 and 28. This consolidated case remains referred to Judge Parker for general pretrial management.

SO ORDERED.

Dated: New York, New York
July 13, 2018

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge